**BUTCHERS' UNION, LOCAL NO. 498, UNITED FOOD AND COMMERCIAL WORKERS; the United Food & Commercial Workers International Union, AFL–CIO; United Food and Commercial Workers International Union, Local 26, AFL–CIO; United Food and Commercial Workers International Union, Local 7; and James Conley, on his own behalf and on behalf of a class of persons similarly situated, Plaintiffs-Appellants,**

v.

**SDC INVESTMENT, INC.; Donald E. Callhan; Les Oesterreich; Eastern Market Beef Processing Corporation; Marcus Rothbart; James Richardson; Douglas A. Hyman; Denver Lamb Company; Verner Averch; Montfort of Colorado, Inc.; Gene Meakins; Ken Montfort; Tate, Bruckner & Sykes; Alaniz, Bruckner & Sykes; Richard Alaniz; Charles Sykes; John Tate; William Bruckner; Henry Dooley; John Guay; Jim Zaporowski; Tom Blessie; John Hiatt; Steve Hiatt; George Sersantes, Defendants-Appellees.**

No. CIV. S–83–325 LKK.

United States District Court,
E.D. California.

March 14, 1986.

David A. Rosenfeld, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for plaintiffs-appellants.

William B. Shubb, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for defendants-appellees SDC Inv., Inc., Donald E. Callahan, Les Oesterreich, Tate, Bruckner & Sykes, Alaniz, Bruckner & Sykes, Richard Alaniz, William Bruckner, and Charles Sykes.

Arthur T. Carter, Alaniz, Bruckner & Sykes, Lincoln, Neb., for defendants-appellees SDC Inv., Inc.; Donald E. Callahan, and Les Oesterreich.

## MEMORANDUM AND DECISION

KARLTON, Chief Judge.

Plaintiffs filed suit pursuant to the civil provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68. After a Status (Pretrial Scheduling) Conference, I permitted plaintiffs to file an amended complaint and allowed defendants to move to dismiss this complaint on any grounds other than

grounds relating to the substantive contents of the RICO statute.[1] The RICO arguments were reserved because of the two RICO cases that were then pending before the United States Supreme Court.[2]

## I

### ALLEGATIONS OF THE SECOND AMENDED COMPLAINT

The plaintiffs are (1) labor unions who were, or would like to be, the bargaining representatives for the defendant employer, SDC Investment, Inc. ("SDC"), and (2) James Conley and Moses Esquivel, employees who seek to represent a class of employees who allegedly were injured by virtue of the conduct forming the gravamen of the complaint. Second Amended Complaint at ¶¶ 5–7.

There are three sets of defendants remaining in the action, (1) the employer defendants (SDC and its officers), (2) the lawyer defendants, and (3) the National Maritime Union defendants[3]. SDC is an employer with its principal place of business within the Eastern District of California. Callahan and Oesterreich are its president and general manager, respectively. Prior to the incidents allegedly giving rise to this action, SDC was a party to a Collective Bargaining Agreement (CBA) with plaintiff Butchers' Union Local 498 (Butchers' Union). ¶¶ 5–7. These defendants are referred to collectively as the SDC defendants.

Two law firms and their partners or employees are also named as defendants. The law firms "Alaniz, Bruckner & Sykes," and "Tate, Bruckner & Sykes" (the law firm) were legal counsel to the employer defendant SDC. Alaniz, Sykes, and Bruckner are partners, members, or employees of the law firm.[4] ¶ 18.

Defendants John Hiatt, Steve Hiatt[5] and George Sersantes are alleged to be agents, employees or representatives of the other defendants, as well as agents of the National Maritime Union which is not a party to this action. ¶¶ 13–14.

Plaintiffs allege that on April 3, 1981, SDC began operation of a slaughterhouse in Dixon, California. ¶ 17. On that same day, SDC recognized the National Maritime Union (NMU) as the bargaining representative of its employees, and two days later executed a collective bargaining agreement with NMU. Id. Plaintiffs allege that this recognition was granted so as to prevent plaintiff Butchers' Union from organizing SDC's employees and was part of a conspiracy by defendants to reduce labor costs, maximize profits for SDC, and enrich both NMU and the law firm defendants. Id. In order to accomplish these purposes, defendants SDC, Oesterreich, Callahan and the lawyers allegedly hired and paid organizers of NMU, payment to be made in the form of travel expenses, reimbursements for hotel, meals, and automobile expenses, as well as direct payment of wages. ¶ 18. Subsequent to the recognition of NMU at the SDC facility in Dixon, and continuing

1. For that reason, this opinion assumes that, except as defendants argue that such causes of action are preempted by the National Labor Relations Act, plaintiffs' complaint states a cause of action under RICO's substantive provisions. See § IV A, infra.

2. Those cases have since been decided. *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346; *American Nat. Bank & Trust Co. v. Haroco, Inc.,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).

3. Plaintiffs originally sued a number of employers located across the United States as well as the present defendants. Defendants challenged plaintiffs' First Amended Complaint on the basis of lack of personal jurisdiction and improper venue. Relative to that motion, I found that because the complaint alleged multiple conspiracies, plaintiffs had failed to meet the burden of showing that the "ends of justice" (see 18 U.S.C. § 1965(b)) required this court to exercise personal jurisdiction over defendants residing in Colorado, Michigan, and Nebraska. Order of December 20, 1984, at 16. I found, however, that there was no bar to the exercise of personal jurisdiction over the remaining defendants. Id. at 23–24.

4. Tate, formerly named as a defendant partner of the law firm was dismissed by this court's order filed June 28, 1985.

5. These two defendants have not been served.

up to November, 1982, SDC, Callahan, and Oesterreich continued to pay money and other things of value to NMU, in violation of 29 U.S.C. § 186. ¶ 20.[6] In the transactions described, the law firm defendants are alleged to have "received substantial fees in their operations and enterprises within the meaning of RICO, 29 [sic][7] U.S.C. § 1961(4)." ¶ 34.

Plaintiffs allege that defendants' activities are in violation of the substantive RICO provisions, 18 U.S.C. § 1962(b), in that defendants have, through a pattern of racketeering activity, acquired or maintained, directly or indirectly, an interest in or control over enterprises which are engaged in or the activities of which affect, interstate commerce. ¶ 35.

Plaintiffs also allege that defendants have conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), ¶ 36, and that defendants have conspired to, violate the provisions of the RICO statute, 18 U.S.C. § 1962(d). ¶ 37. Plaintiffs allege that defendants' payments to NMU are in violation of the Labor Management Relations Act, 29 U.S.C. § 186.[8] ¶ 38. Plaintiffs also allege that for the purpose of executing their illegal scheme, defendants used the mail and wire systems in violation of 18 U.S.C. §§ 1341 and 1343. ¶¶ 39–40.[9]

Plaintiffs seek treble damages on their RICO claims, injunctive relief under the labor claim and broad injunctive relief, among other things, in the form of an order dissolving the defendant law firms and prohibiting the defendants from practicing law for twenty-five (25) years. ¶ 42.

## II

## DISMISSAL STANDARDS UNDER FED.R.CIV.P. 12(b)(6)

On a motion to dismiss, the allegations of the complaint must be accepted as true.

---

6. The allegations of the Second Amended Complaint include allegations against the former defendant employers who were dismissed from this action by the court's order of December 20, 1984. These allegations remain for factual background. These defendants have been dismissed and are no longer parties to this action. *See* n. 3 and Order of December 20, 1984.

7. The court assumes that plaintiffs incorrectly cited to Title 29 instead of properly citing to Title 18. There is no Title 29 U.S.C. § 1961(4).

8. The allegations of plaintiffs' complaint as to § 186 are: "The activities of defendants described above violate 29 U.S.C. § 186 in that defendants, and each of them, have paid money or other things of value to representatives of their employees who are employed in an industry affecting commerce, or to a labor organization or an officer or employee of and/or to an employee of the employers described above employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee of [sic] employees to directly or indirectly influence other employees in the exercise of their right to organize and bargain collectively to [sic] representatives of their own choosing."
   Plaintiffs appear to have drafted their complaint with the statute in hand.

9. The relevant allegations of plaintiffs' complaint as to the mail and wire fraud claims are as follows: "The above described facts are a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises; and for the purpose of executing such scheme or artifice, defendants placed in a post office or authorized depository for mail matters, some matters or things to be sent or delivered by the Postal Service, or took or received therefrom, some matter or thing; or knowingly caused to be delivered by mail according to the direction thereof, or at the place at which it was directed to be delivered by the person to whom it was addressed; some such matter or thing including but not limited to money, checks, collective bargaining agreements, N.L.R.B. documents, authorization cards, plane tickets and various other things all in violation of 18 U.S.C. Section 1341." ¶ 39.
   "The above described facts are a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises and for the purpose of executing such scheme or artifice, defendants promised, transmitted or caused to be transmitted by means of wire in interstate commerce signs, signals, or sounds for the purpose of executing such scheme or artifice all in violation of 18 U.S.C. Section 1343. *Inter alia,* advice was given from defendant lawyers to the other defendants, including defendant union-employer-agent as to the manner by which this scheme or artifice could be carried out and accomplished." ¶ 40.

*Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam). The court is bound to give the plaintiffs the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks International Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Thus, the plaintiffs need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. *See id. See also, Wheeldin v. Wheeler,* 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint). In general, the complaint is construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

So construed, the court may dismiss the complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, ——, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984), *citing Conley v. Gibson,* 355 U.S. 41, 45–6, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). In spite of the deference the court is bound to give to the plaintiffs' allegations, however, it is not proper for the court to assume that "the Union can prove facts that it has not alleged or that the defendants have violated the ... laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters,* 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

## III

### THE MOTION

Defendants argue that this action is an attempt by plaintiffs, in the form of civil RICO claims for treble damages and injunctive relief, to litigate in this court matters that are within the exclusive jurisdiction of the National Labor Relations Board (NLRB) and which have already been dis-

posed of under the NLRB's processes. Defendants make three specific arguments. First, they argue that plaintiffs' claims are preempted by the exclusive jurisdiction of the NLRB. Second, they argue that plaintiffs' claims are precluded by a prior NLRB settlement agreement. Third, they argue that plaintiffs' claims are barred by the statute of limitations. Only the first claim requires extended discussion.

Defendants contend that plaintiffs' purported injuries result from three acts: (1) the unlawful recognition of NMU by SDC; (2) the execution of a contract with NMU; and (3) the alleged failure of SDC to hire members of Local 498.[10] As such, defendants argue, they amount to unfair labor practices prohibited by the National Labor Relations Act (NLRA) and are subject to the exclusive jurisdiction of the NLRB. They note that the purpose of the NLRA is to protect against and provide a remedy for precisely the type of conduct alleged by plaintiffs. They rely on cases such as *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), and *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971). Under *Lockridge,* defendants argue that the court must look to the conduct being regulated, not the formal description of the governing legal standard. 403 U.S. at 292. Because adjudication of plaintiffs' RICO claim, defendants say, would require this court to ascertain whether defendants had (1) recognized NMU when it did not enjoy the support of the employees, (2) executed contracts with NMU, and (3) deliberately refused to hire members of Local 498, all questions within the exclusive jurisdiction of the NLRB, the complaint must be dismissed.

## IV

### LABOR LAW PREEMPTION AND EXCEPTIONS THERETO

█ As a general rule, NLRB jurisdiction preempts the jurisdiction of both state

---

**10.** Plaintiffs allege that all of these injuries resulted from payments made by the defendants in violation of § 186.

courts, *Sears, Roebuck & Co. v. San Diego Dist. Council of Carpenters,* 436 U.S. 180, 187, 98 S.Ct. 1745, 1752, 56 L.Ed.2d 209 (1978), and federal courts. *See Motor Coach Employees v. Lockridge,* 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971). As the Supreme Court has explained, unlike the doctrine of primary jurisdiction, labor law preemption ousts the courts of power to act "unless the Board determines that the disputed conduct is neither protected nor prohibited by the federal act." *Sears, Roebuck & Co.,* 436 U.S. at 199 n. 29, 98 S.Ct. at 1758.

Consideration of defendants' arguments most usefully begins with a brief examination of the evolution of American labor law. I have previously had occasion to address Congress' attempts to balance the competing interests of management and labor. *See Constar, Inc. v. Plumbers Local 447,* 568 F.Supp. 1440 (E.D.Cal.1983), *aff'd* 748 F.2d 520 (9th Cir.1984). There, I noted that when Congress created the National Labor Relations Board to administer the National Labor Relations Act, it expressed a judgment that the norms of labor relations could best be developed and applied by a specialized administrative agency rather than by the courts. 568 F.Supp. at 1443, *citing* R. Gorman, *Basic Text on Labor Law,* 291 (1976). Thus, the Board's jurisdiction over unfair labor practices was, as originally codified, "exclusive." 29 U.S.C. § 160(a). *Amalgamated Utility Workers v. Consolidated Edison Co.,* 309 U.S. 261, 264, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940). However, in response to the contention that labor unions had grown too powerful, Congress enacted the Labor Management Relations Act (LMRA) in 1947, which provided, in § 303, that certain unfair labor practices would give rise to a suit by employers in federal court. 29 U.S.C. § 187(b); *Constar* at 1443; *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.,* 342 U.S. 237, 241–42, 72 S.Ct. 235, 238, 96 L.Ed. 275 (1952). In recognition of this cause of action, Congress deleted from § 160(a) the description of the NLRB's power as "exclusive." *International Ass'n of Machinists v. Gonzales,* 356 U.S.

617, 630 n. 17, 78 S.Ct. 923 at 930 n. 17, 2 L.Ed.2d 1018 (1958) (Warren, C.J., with Douglas, J., dissenting). In doing so, Congress "intended to provide two remedies— one directed to ending unfair labor practices [a § 8(b)(4) proceeding before the NLRB], the other to providing for recovery of damages [a § 303 suit in federal court]." *Constar* at 1443. In *Juneau Spruce,* the Supreme Court was confronted with the issue of whether a suit for damages under § 303 lies in the district courts even though the NLRB had not yet resolved the question of whether the complained of conduct constituted an unfair labor practice. The court determined that the action would lie, observing that while § 8(b)(4) and § 303 "are substantially identical in the conduct condemned ... [t]he fact that the two sections have an identity of language and yet specify two different remedies is strong confirmation of our conclusion that the remedies provided were to be independent of each other." 342 U.S. at 243–44, 72 S.Ct. at 239. Thus the NLRA, as amended by the LMRA, "represents national policy which has both administrative and conventional legal sanctions." *Id.* 342 U.S. at 245, 72 S.Ct. at 240. Congress has, in like manner, provided in § 301 of the LMRA, 29 U.S.C. § 185, for private rights of action brought by employees alleging discharges in violation of collective bargaining agreements, although such breaches also constitute unfair labor practices. *Vaca v. Sipes,* 386 U.S. 171, 179–80, 87 S.Ct. 903, 910–11, 17 L.Ed.2d 842 (1967).

■ In sum, while Congress created the NLRB as a specialized administrative agency for all labor disputes, in §§ 301 and 303 it created statutory exceptions to the exclusive jurisdiction of the NLRB. In the absence of Constitutional inhibition, Congress has plenary power to allocate jurisdiction to hear labor law violations between the courts and an administrative agency. Put another way, Congress gets to make the rules—and change them. Congress could, and did, create the NLRB as the exclusive forum for consideration of certain conduct, but can and does create exceptions to that

exclusivity. Thus, although the Supreme Court has taught that in preemption cases "[i]t is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern," *Lockridge,* 403 U.S. at 292, 91 S.Ct. at 1920, where Congress has provided remedies for proscribed conduct independent of those available in an NLRB proceeding, the preemption doctrine has no application. *Vaca v. Sipes.* If Congress creates such an independent remedy, then it makes no difference that the conduct is characterized as an unfair labor practice. As the Supreme Court has explained the "preemption doctrine ... has never been rigidly applied to cases where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB." *Vaca v. Sipes,* 386 U.S. at 179, 87 S.Ct. at 910. With these general principles in mind, I turn to the instant motion.

V

RESOLUTION OF THE MOTIONS

The question that is tendered in the instant motion is whether RICO, in making conduct which falls within the ambit of § 186 and the mail and wire fraud statute's predicate acts, created an additional exception to the NLRB's exclusive jurisdiction. Put another way, the question is whether in RICO Congress has created an additional remedy for conduct which is outside the ambit of the NLRB's exclusive jurisdiction, or whether the statute is preempted by the labor law.

While a consideration of general principles is important, resolution of the motion requires close attention to the particular allegations of the complaint. As the Ninth Circuit has observed, "problems arising because of concurrent jurisdiction over acts constituting simultaneously a breach of contract and an unfair labor practice [can] best be dealt with on a case by case basis." *George Day Const. Co., Inc. v. United Brotherhood of Carpenters and Joiners of*

*America,* 722 F.2d 1471, 1481 (9th Cir. 1984), *citing Smith v. Evening News Ass'n,* 371 U.S. 195, 197–98, 83 S.Ct. 267, 268–69, 9 L.Ed.2d 246 (1962).

A. *The Section 186 Claims*

I turn first to the § 186 claims. As with any question of congressional intent, analysis begins with the language of the statute and where appropriate, the legislative history. *Sierra Club v. Watt,* 608 F.Supp. 305, 331 (E.D.Cal.1985), *citing North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983).

By the plain words of the statute, Congress has provided that the violation of § 186 suffices to predicate civil liability under RICO.[11] If unambiguous, the statute's language controls interpretation, absent "a clearly expressed legislative intent to the contrary." *Russello v. United States,* 464 U.S. 16, 20, 104 S.Ct. 296, 299, 78 L.Ed.2d 17 (1983) (a RICO case), *quoting United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (also a RICO case), *quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). Following the analytical mode articulated by the Supreme Court in *Juneau Spruce,* the fact that § 186—a labor statute—is specifically referenced in RICO "is strong confirmation of [the] conclusion that the remedies provided were to be independent of each other." 342 U.S. at 243–44. Indeed, it is hard to imagine that Congress would have made § 186 a RICO predicate act without the intention of making violations of § 186, which necessarily arise in the labor context, the basis of a RICO action brought in the district court. Because the statute appears plain on its face, recourse to the legislative history appears unnecessary. See *United States v. Scotto,* 641 F.2d 47, 57 (2d Cir. 1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981).

11. "Racketeering activity" is defined as a number of substantive offenses, among them "(C) any act which is indictable under Title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) ..." 18 U.S.C. § 1961(1).

The legislative history, however, buttresses the conclusion that plaintiffs' § 186 claims are not preempted by the NLRA. Sponsors of the bill that became RICO emphasized the need to end illegitimate unions and the resultant "sweetheart contracts," believing that violation of § 186 corrupts legitimate labor management relations, and leads to "labor peace [being] sold to businesses." 116 Cong.Rec. 591 (1970). *See also*, Comments of Senator Allott, 116 Cong.Rec. 603 (1970). Senator McClellan, discussing the infiltration of organized crime into the labor movement, explained Senate Bill No. 30 by saying:

> Control of labor supply through control of unions can prevent the unionization of some industries or can guarantee sweetheart contracts in others. It provides the opportunity for theft from union funds, extortion through the threat of economic pressure, and the profit to be gained from the manipulation of welfare and pension funds and insurance contracts. Trucking, construction and waterfront entrepreneurs have been persuaded for labor peace to countenance gambling, loan sharking and pilferage. All of this, of course, makes a mockery of much of the promise of the social legislation of the last half century.

115 Cong.Rec. 5874 (1969). In the House, Representative Poff described the victimization of workers through "sweetheart" labor contracts gained through mob funding. 116 Cong.Rec. 35201 (1970). This legislative history, while it does not squarely address the issue before us, at least suggests that the drafters of RICO had, as one of their objectives, putting an end to labor racketeering in general and sweetheart contracts in particular; certainly the Act's reference to § 186 must be seen as furthering that purpose.

Thus the statute on its face clearly indicates that plaintiffs' § 186 claims are not preempted, and the legislative history seems to suggest the same conclusion. De-

fendants nonetheless contend that the motion must be granted. They argue that given the complaint, this court will be required to resolve labor law questions extraneous to the alleged violations of § 186 and that those issues are within the exclusive jurisdiction of the NLRB. The argument must be rejected. It is now settled that "the federal courts may decide labor law questions that emerge as collateral issues in suits brought under independent federal remedies." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 85, 102 S.Ct. 851, 860, 70 L.Ed.2d 833 (1982), *quoting Connell Const. Co., Inc. v. Plumbers and Steamfitters Local Union No. 100*, 421 U.S. 616, 626, 95 S.Ct. 1830, 1836, 44 L.Ed.2d 418 (1975). The central question in RICO litigation is whether a violation of the statute occurred. It is true that in the instant case (and perhaps regularly) where the RICO claim is predicated on § 186 violations, labor law questions will have to be resolved, but that is simply a consequence of Congress making § 186 violations predicate acts for RICO purposes. Given the statute, the other labor law questions must be viewed as collateral, and under *Kaiser* and *Connell*, amenable to resolution in the district courts.

Defendants argue, however, that other courts have found that § 186 claims are preempted in this context. They particularly rely on *American Commercial Barge Lines Co. v. Seafarers Intern. Union of North America*, 730 F.2d 327 (5th Cir.1984) and *Local 355, Hotel, Motel, Restaurant & Hi-Rise Employees and Bartenders Union v. Pier 66*, 599 F.Supp. 761 (S.D.Fla. 1984). The argument is not persuasive.

I begin by noting that *Seafarers* was not a preemption case but rather involved the issue of primary jurisdiction.[12] Indeed, the court there held that § 186 "plainly" gave the federal courts the jurisdiction to restrain trust fund violations. 730 F.2d at

---

12. For a discussion of the distinction between preemption as described in § IV, *supra*, and primary jurisdiction, see *Sears, Roebuck & Co.*

*v. Carpenters*, 436 U.S. 180, 199 n. 29, 98 S.Ct. 1745, 1758 n. 29, 56 L.Ed.2d 209 (1978).

339. Put bluntly, *Seafarers* does not aid defendants' cause.[13]

As defendants note, however, *Pier 66* is directly on point. There, the plaintiff union alleged that the defendant employer offered its employees monetary inducements as well as other employment benefits for the purpose of obtaining the decertification of the union as the employees' exclusive bargaining agent in violation of § 302, 29 U.S.C. § 186(a)(3), and RICO, 18 U.S.C. § 1964. The court granted summary judgment to the defendant, holding that the claims presented by the union fell "squarely within those activities that are arguably subject to section 7 or section 8 of the NLRA" and were "nothing more than a charge of unfair labor practice." *Id.* at 764.[14]

■ With all due respect, I disagree. The *Pier 66* court sought to distinguish its holding from *Juneau Spruce* on the basis that an employer has the right to sue for monetary damages under § 303 of the LMRA, 29 U.S.C. § 187, while § 302, 29 U.S.C. § 186, provides only for criminal sanctions and injunctions for a violation of its provisions. *Id.* at 764 n. 3. This distinction misconstrues the nature of the inquiry. RICO's predicate act requirement does not speak to the form of relief available under the predicate statute. Instead, it describes as "racketeering activities" acts indictable under certain federal statutes, among them the provisions of 29 U.S.C. § 186. 18 U.S.C. § 1964(c) itself provides monetary relief. Put another way, RICO provides for monetary damages if a defendant engaged in conduct which was indictable under § 186, thus the fact that § 186 itself

does not provide for monetary damages appears simply irrelevant.[15]

■ For all of the reasons noted above, I find that properly pled RICO claims relying on § 186 predicate acts are not preempted by the NLRB and questions of labor law properly tendered in such a suit do not require dismissal where the suit otherwise lies.

### B. *The Wire and Mail Fraud Claims*

■ Plaintiffs also allege that defendants' conduct constitutes a violation of the wire and mail fraud statutes, and that these violations constitute alternative predicate violations under 18 U.S.C. § 1961(1) sufficient to demonstrate liability for racketeering activity under RICO. Here, unlike the provisions incorporating § 186, the allegations seek to predicate liability on violations of generic statutes. Because of its generality, RICO's reference to them cannot be said to speak, by its terms, to the question of labor law preemption. Moreover, the inclusion of § 186 violations as predicate acts suggests that Congress was being selective as to what activities were being removed from the ambit of the exclusive jurisdiction of the labor law. The violation of no other labor statute constitutes a RICO predicate act.

The legislative history, although it speaks quite directly to Congressional intent that RICO provide civil remedies for labor law crimes, does not address the question of whether the mail and wire fraud statutes could be employed in that attempt, where the activities complained of are also unfair labor practices subject to the NLRB's exclusive jurisdiction. The legislative history is replete with expres-

---

13. The circuit court did find that deferral of the question of granting injunctive relief was appropriate because an injunction would suspend the collective bargaining process without resolving the alleged illegalities. No such issues are tendered in the instant case.

14. The court also found that the plaintiff union did not state a RICO claim because the union did not suffer an injury to its business or property within the meaning of 18 U.S.C. § 1964(c), as the only injuries alleged were "incidental

damages" of attorneys fees and costs incurred by the decertification effort which, in that court's opinion, did not give rise to the type' of proprietary damage for which RICO provides compensation. *Id.* at 765 and 764 n. 3.

15. Defendants also rely on preemption cases arising under other statutes. Because RICO specifically makes reference to § 186, they are clearly distinguishable and need not be addressed at length.

sions of congressional concern about the relationship of organized crime and organized labor. These concerns, however, do not aid the inquiry into whether the labor law preempts mail and wire fraud claims where RICO does not reference a labor statute and the conduct constitutes an unfair labor practice.[16]

It appears to the court that neither the language of the statute nor the legislative history resolves the issue of preemption. The Ninth Circuit has recently explained, that if there is a "lack of useful statutory or congressional guidance, the question should be resolved by the 'accepted' principles of labor law preemption." *Laborers Health & Welfare Trust Fund for Northern California v. Advanced Lightweight Concrete Co., Inc.*, 779 F.2d 497, 504 (9th Cir.1985). The general principle, of course, is that where a claim is arguably within the Board's jurisdiction, the claim is preempted. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 779, 3 L.Ed.2d 775 (1959). Under this mode of analysis it would appear that where plaintiff seeks to prove as predicate acts conduct indictable under the mail or wire fraud provisions, which otherwise falls within the exclusive jurisdiction to the NLRB, it is likely that the cause of action will not lie under RICO, but will be found to be preempted by the labor law.[17]

There is in the instant case, however, a second and more persuasive reason to find that the wire and mail fraud predicate claims are preempted. That reason is also drawn from *Advanced Lightweight.* There, the court of appeals held that the primary jurisdiction of the NLRB preempted a trust fund's suit, brought under sections 502 and 515 of the Employee Retirement Security Act (ERISA), to recover delinquent contributions from an employer accrued after a collective bargaining agreement had expired. *Id.* As I explain below, central to the circuit's decision was the nature of the employer's alleged liability.

The trust fund sued the employer because the employer had failed to make contributions to the fund as required under the terms of an expired collective bargaining agreement. *Id.* at 499. The employer would have had no obligation under ERISA, or otherwise, to make contributions except for a duty arising under the labor law. That is, the only reason that the employer might be held liable to the trust fund was because of the labor law requirement that employers maintain the status quo, i.e., continue contributions, during the collective bargaining process. Thus it was the labor law which governed the nature and scope of the employer's obligations. Under such circumstances, the Circuit held that the centrality of the effect of the labor law on evaluating the employer's liability, required that the NLRB be the body determining the issue of whether the employer's obligation existed. Accordingly, the court held that plaintiff's ERISA claims were preempted.

---

**16.** The "Statement of Findings and Purpose" of the Organized Crime Control Act of 1969 which became RICO states in relevant part that the "money and power" that organized crime obtains from illegal endeavors is "increasingly used to infiltrate and corrupt legitimate businesses and labor unions." 116 Cong.Rec. 575 (1970). Senator McClellan, one of the sponsors of the Act, quoted the President's Message on Organized Crime in support of the Act as follows: "[Organized crime] quietly continues to infiltrate and corrupt organized labor." 116 Cong.Rec. 585 (1970). Senator McClellan also noted the infiltration of labor organizations by crime figures, 116 Cong.Rec. 586 (1970). Shortly after Senator McClellan introduced the Act, Senator Hruska introduced an additional bill aimed at racketeering which, in his own words created "civil remedies for the honest businessman who has been damaged by unfair competition from the racketeer businessman. ... Patterned closely after the Sherman Act, it [the bill] provides for private treble damage suits, prospective injunctive relief, unlimited discovery procedures and all the other devices which bring to bear the full panoply of our antitrust machinery in aid of the businessman competing with organized crime. 115 Cong.Rec. 6993 (1969). *See also,* Blakey, G. and Golstock, R., *On the Waterfront—RICO and Labor Racketeering,* 1980. 17 Am.Crim.L.Rev. 341, 342.

**17.** Except of course where plaintiff alleges a violation of § 186. *See* § V A, *supra.*

In like fashion, it appears in the instant case that *but for* the proscriptions of the labor law, defendants' conduct simply would not be either mail or wire fraud. The mail and wire fraud statutes denounce the use of the mails or wire to perpetrate a fraud, but leave to other laws the definition of what is a fraud. "Congress enacted § 1341 forbidding and making criminal any use of the mails 'for the purpose of executing [a] scheme' to defraud or to obtain money by false representations—leaving generally the matter of what conduct may constitute such a scheme for determination under other laws." *Parr v. United States,* 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960), *quoting* 18 U.S.C. § 1341. The wire fraud provision, § 1343, was patterned after § 1341 and was meant to receive a like interpretation. *United States v. Louderman,* 576 F.2d 1383, 1387 and n. 3 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978).

In essence then, defendants' use of the mails or wire is an indictable offense only where its purpose is the execution of a fraud. Whether the conduct constitutes a fraud is defined elsewhere by the law. Under the instant complaint, this configuration is crucial since, under plaintiffs' allegations, the only reason defendants' conduct can be alleged to be unlawful, is that it is denounced by the labor law.[18] Under *Advanced Lightweight,* such a claim must be viewed as preempted.

■ The complaint alleges that the lawyer defendants "earned and received substantial fees from the *unlawful* plans and schemes described," ¶ 34, and that the employer defendant, SDC, in cooperation with the lawyers, hired and made *"unlawful"* payments to organizers of NMU in order to cause them to influence other employees of SDC in their right to organize or bargain collectively in violation of § 186. ¶ 18 (emphasis added). This conduct is only alleged to be unlawful, by the terms of the complaint, because it violates § 186.[19] The gravamen of plaintiffs' complaint is that "the activities of defendants described above violate 29 U.S.C. § 186 in that defendants ... have paid money or other things of value to representatives of their employees ... or to a labor organization ... for the purpose of causing such employee of [sic] employees to directly or indirectly influence other employees in their exercise of their right to organize and bargain collectively to [sic] representatives of their own choosing." ¶ 38. Bluntly put, no matter how you cut the complaint, the only conceivable "fraud" is the deprivation of plaintiffs' rights under the labor law. Since defendants' liability, under the mail and wire fraud statutes, if any, is wholly dependent on the labor laws, judgment of defendants' conduct under *Advanced Lightweight* lies exclusively with the NLRB. For the above reasons, it is the court's view that plaintiffs' claims predicated on mail and wire fraud are preempted and must be dismissed.

For all the above reasons, the court orders:

1. Defendants' motion to dismiss the plaintiffs' claims predicated upon a violation of § 186 is DENIED;[20]

2. Defendants' motion to dismiss plaintiffs' complaint predicated upon violation of

---

**18.** See footnote 9 for the plaintiffs' allegations.

**19.** This conduct would also constitute an unfair labor practice actionable under § 8 of the NLRA, but that allegation is not made.

**20.** Defendants also seek dismissal because the settlement of the NLRB actions bars this litigation, and that the litigation is barred by the statute of limitations. Both arguments must be rejected.

The effect of a previous settlement on subsequent litigation is a question of the intention of the parties. *See Kodiak Oil Field Haulers, Inc. v. Teamsters Union Local No. 959,* 611 F.2d 1286 (9th Cir.1980) (strike settlement bars § 301 litigation when such is intent of the parties). Examination of both the NLRB complaints and the settlement agreement itself does not clearly demonstrate the intent of the parties.

The statute of limitations for RICO actions when brought in California is three years. *Compton v. Ide,* 732 F.2d 1429, 1433 (9th Cir. 1984). This action was brought within the statutory period.

the mail and wire fraud statutes is GRANTED;

3. A Status Conference is now set for April 28, 1986, at 3:00 p.m. The parties are directed to file full status reports in accordance with Local Rule 240.

IT IS SO ORDERED.