Donald BRENNAN; Martin Connaughton; Tad Derf; Howard Dobbins; Duane Evavold; Thomas Ojard; John Soderquist, Appellants,

v.

Jack L. CHESTNUT; Chestnut and Brooks, P.A.; Anthony F. Rico; Edward J. Senff; George Luckenbill; Richard E. Olsen; Andrew J. Sciullo; Jan Ziegler; Robert W. O'Brien; William T. Rogers; Seaway Services Corporation; General Business Services, Inc.; Central Dispatch, Inc.; Upper Great Lakes Pilots, Inc., Appellees.

No. 91–3779.

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1992.

Decided Aug. 21, 1992.

D. Edward Fitzgerald, Duluth, Minn., argued (Gaylor W. Swelbar and Robin C. Merritt, on the brief), for appellants.

Kay Nord Hunt, Minneapolis, Minn., argued (Phillip A. Cole, on the brief), for appellees.

Before WOLLMAN and HANSEN, Circuit Judges, and ROY,* Senior District Judge.

HANSEN, Circuit Judge.

Appellants ("the pilots") are ship pilots employed by and minority shareholders in appellee Upper Great Lakes Pilots, Inc. (UGLP). The remaining appellees (the "UGLP parties") are persons and companies affiliated with UGLP. The pilots appeal from the district court's [1] dismissal of their complaint alleging violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1988), and common law fraud. *See Brennan v. Chestnut*, 777 F.Supp. 1469 (D.Minn.1991). We affirm.

UGLP is a government-franchised monopoly established pursuant to the Great Lakes Pilotage Act of 1960, 46 U.S.C. §§ 9301–9308 (1988). Ships operating on Lakes Huron, Michigan, and Superior, the St. Mary's River, and the Sault St. Marie Locks are required to hire a UGLP pilot. The United States Department of Transpor-

---

* The Honorable ELSIJANE TRIMBLE ROY, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

tation (DOT) regulates UGLP and sets pilot rates, which are based in part on UGLP's expenses. The pilots' complaint alleges that UGLP violated RICO through predicate acts of mail and wire fraud, extortion, and acts chargeable under unspecified state laws, by fraudulently inflating the expenses claimed on financial information submitted to DOT. The pilots claim that UGLP has entered into fraudulent agreements with Seaway Services Corporation, Central Dispatch, Inc., and General Business Services, Inc., in which UGLP pays more than the fair market value for leased equipment and various services. The pilots allege that the UGLP parties are siphoning off UGLP's profits, some of which would otherwise be distributed to the pilots as employees and as shareholders of UGLP. The pilots further allege that UGLP has maintained its fraudulent scheme through threats and acts of coercion and extortion directed at the pilots.

The district court dismissed the RICO claim, finding it preempted by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151–168 (1988). The district court also dismissed the pendent common law fraud claim pursuant to *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and denied the pilots' motion to transfer venue.

 The NLRA "pre-empts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the Act." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971) (citing *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959)) ("*Garmon* preemption"). The *Garmon* preemption doctrine does not apply if: (1) Congress has expressly carved out an exception to the National Labor Relations Board's (NLRB) jurisdiction; (2) the regulated activity is merely a peripheral concern of the labor laws; or (3) the regulated activity touches interests deeply rooted in local feeling and responsibility. *Vaca v. Sipes*, 386 U.S. 171, 179–80, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967) (citing

cases). *Garmon* preemption completely deprives the courts of power to act unless the NLRB determines that the challenged conduct is not protected or prohibited by the NLRA. *Sears, Roebuck & Co. v. San Diego County Dist. Council of Carpenters*, 436 U.S. 180, 199 n. 29, 98 S.Ct. 1745, 1758 n. 29, 56 L.Ed.2d 209 (1978).

At issue in this matter is whether the NLRA preempts the pilots' RICO claim under *Garmon*. The leading case discussing whether *Garmon* preemption applies to RICO claims is *Butchers' Union, Local No. 498 v. SDC Inv., Inc.*, 631 F.Supp. 1001 (E.D.Cal.1986). The *Butchers' Union* court reasoned that a RICO claim based on allegations of mail and wire fraud as predicate acts would be preempted if the underlying conduct falls within the exclusive jurisdiction of the NLRB because mail and wire fraud are "generic" acts. *Id.* at 1010. The mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343 (1988), do not define fraud but rather leave that definition to other laws. *Butchers' Union*, 631 F.Supp. at 1011. If the court must look to the labor laws to define the fraud, then preemption applies. *Id.* *Contra Hood v. Smith's Transfer Corp.*, 762 F.Supp. 1274, 1286–87 (W.D.Ky.1991). Likewise, the extortion statute upon which the pilots rely, 18 U.S.C. § 1951 (1988), is generic in nature. The unspecified state law referenced in the complaint also appears to be a generic law prohibiting extortionate acts. If the court must look to the labor laws to define the extortion, then, under the logic of the *Butchers' Union* court, preemption would apply. Recently, the Seventh Circuit reached conclusions similar to the conclusions reached in *Butchers' Union* in *Talbot v. Robert Matthews Dist. Co.*, 961 F.2d 654, 659–63 (7th Cir.1992). We adopt the reasoning of the *Butchers' Union* court.

The *Butchers' Union* court also noted that a claimed violation of 29 U.S.C. § 186 would not be preempted because RICO includes violations of § 186 within the definition of "racketeering activity." *Butchers' Union*, 631 F.Supp. at 1007–09; 18 U.S.C. § 1961(1) (1988). The fact that no other labor statute is mentioned in the RICO statute suggests that violations of labor

laws other than § 186 alleged as predicate acts are preempted. *Butchers' Union*, 631 F.Supp. at 1009. *See also MHC, Inc. v. International Union, United Mine Workers*, 685 F.Supp. 1370, 1376 (E.D.Ky.1988). The district court's finding that the pilots do not allege any violation of § 186 has not been challenged on appeal.

The pilots' complaint alleges the following acts of mail and wire fraud and extortion: (1) pilots Dobbins, Derf, Ojard, and Soderquist's employment was terminated because of their union activities; (2) the pilots were threatened, coerced, and extorted into accepting working rules and wage agreements and from seeking relief from regulatory agencies; and (3) in reducing the compensation paid to the pilots, the UGLP parties fraudulently represented that the profitability of UGLP was declining due to the DOT's refusal to increase rates and a decline in shipping traffic when, in fact, profitability was declining due to defendants' siphoning of profits. Complaint, paras. 21–25.

Subsequent to the district court's opinion, an administrative law judge (ALJ) of the NLRB issued his decision in *Upper Great Lakes Pilots, Inc. and Captain Howard C. Dobbins, and Upper Lakes Pilots Association, District No. 3*, Case No. 18–CA–11351 (May 27, 1992).[2] The ALJ found that UGLP violated § 8(a)(1) of the Act by: (1) informing employees they have been laid off because of their protected concerted activities; (2) threatening reprisals against employees for engaging in protected concerted activities; (3) coercively interrogating employees about their union and other protected concerted activities; and (4) creating the impression of surveillance of union activities. The ALJ also found that UGLP violated § 8(a)(2) of the Act by interfering with the administration of the Union and rendering assistance and support to the union and violated § 8(a)(3) of the Act by terminating several employ-

ees, some of whom are appellants in this action. The ALJ entered a cease and desist order and ordered UGLP to rehire the terminated employees with backpay.

We find that the pilots' RICO claim is preempted by the NLRA.[3] The pilots' claims are clearly within the NLRB's jurisdiction, as is demonstrated by the NLRB's decision on those matters. Title 29, U.S.C. § 157 gives employees the right to self-organization. Section 158(a)(1) prevents employers from interfering with or coercing employees in the exercise of their rights under § 157. The pilots' claim that UGLP is violating the compensation provisions of the collective bargaining agreement is covered by § 158(d), which imposes an obligation to bargain collectively in good faith. The ALJ noted that the primary motivation for the pilots' union activities was "their concerns over [UGLP's] expense levels and other management practices affecting employment." *Upper Great Lakes Pilots, Inc.*, slip op. at 10. *See also id.* at 14. We conclude that the pilots' RICO claim is preempted by *Garmon* as it involves conduct protected and prohibited by the NLRA. *Cf. McDonough v. Gencorp, Inc.*, 750 F.Supp. 368, 369–71 (S.D.Ill.1990) (RICO claim based on threats and coercion directed at union organizers because of their activities is preempted under NLRA); *Danielsen v. Burnside–Ott Aviation Training Ctr., Inc.*, 746 F.Supp. 170, 176–77 (D.D.C.1990) (RICO claim based on assertion of underpayment of wages and fringe benefits due under the McNamara–O'Hara Service Contract Act (SCA), 41 U.S.C. §§ 351–358 (1988), preempted by SCA's administrative remedies), *aff'd on other grounds*, 941 F.2d 1220 (D.C.Cir. 1991).

Additionally, the pilots argue that their RICO claim is also made in their capacity as minority shareholders of UGLP. The collective bargaining agreement provides that each pilot shall partic-

---

**2.** We take judicial notice of this decision.

**3.** The pilots also argue that their RICO claim is not preempted under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988). We read the district court's opinion as finding preemption under *Garmon* and the

NLRA, which is a separate issue from preemption under § 301. As we find the pilots' RICO claim to be preempted under *Garmon*, we need not decide whether § 301 preemption also applies.

ipate in a stock purchase and redemption agreement. Thus, the pilots are shareholders only by virtue of the fact that they are employees. A shareholder may not maintain an action for an injury to a corporation resulting in a diminution in the value of shares under RICO absent a showing of individual and direct injury to the shareholder. *See Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir.1989); *Rand v. Anaconda–Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 579, 93 L.Ed.2d 582 (1986); *Warren v. Manufacturers Nat'l Bank*, 759 F.2d 542, 544 (6th Cir.1985). The pilots assert, however, that they are not basing their claim as shareholders on any diminution in the value of their shares or corporate assets. They contend that the complaint alleges a direct and distinct injury to them as shareholders.

The only specific allegation in the complaint regarding the pilots' status as shareholders is that the alleged "threats, coercion and extortion were directed and intended to force plaintiffs to refrain ... from questioning the financial information provided to plaintiffs as shareholders and/or employees of Upper Great Lakes Pilots, Inc." Complaint, at para. 21. The pilots contend that Minnesota law creates a fiduciary relationship between the majority shareholders and the minority shareholders in a closely held corporation, *see Pedro v. Pedro*, 463 N.W.2d 285 (Minn.App.1990), *review denied* (Minn. Jan. 24, 1991), and permits minority shareholders to sue majority shareholders for the violation of the majority's fiduciary duty. *See* Minn.Stat. § 302A.751. This statute permits the court to "grant any equitable relief it deems just and reasonable in the circumstances," including liquidation of the corporation. Although money damages for breach of fiduciary duty may be awarded under this pro-vision, the award is limited to the diminution in the value of the shares attributable to the breach. *Pedro*, 463 N.W.2d at 288.

■ The pilots' complaint makes no specific mention of a breach of a fiduciary duty owed by the defendants as majority shareholders to the minority shareholder pilots. In any event, a majority shareholder does not owe a fiduciary duty to an employee minority shareholder who acquires a small percentage of stock as part of his or her employment compensation. *Harris v. Mardan Business Sys., Inc.*, 421 N.W.2d 350, 353 (Minn.App.1988), *review denied* (Minn. May 18, 1988). Further, the section of the pilots' complaint denominated "damages" makes no specific reference to injury as shareholders, but rather focuses on the pilots' claimed injury as employees.[4]

■ A RICO plaintiff has standing only if injured in his business or property. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). We find that the pilots' complaint does not assert a viable RICO claim based on their status as shareholders as the pilots have made no allegation of direct and individual injury to their business or property resulting from their status as shareholders, rather than from their status as employees.[5]

Finally, we find no error or abuse of discretion in the district court's dismissal of the pilots' pendent common law fraud claim under *United Mine Workers v. Gibbs* or in the district court's denial of the motion to transfer venue.

Accordingly, we affirm.

---

**4.** "[T]he defendants' actions and scheme directly reduce the revenue of Upper Great Lakes Pilots, Inc. which otherwise would be available for distribution to the plaintiffs as compensation for their services. Defendants have caused plaintiffs to receive significantly less income than the target pilot compensation amount used by the regulatory agencies to establish pilotage rates." Complaint, at para. 46.

**5.** *Grogan v. Garner*, 806 F.2d 829 (8th Cir.1986), is not to the contrary. *Grogan*, applying Missouri law, notes that an individual stockholder may sue for a fraud affecting him directly. The *Grogan* court, however, distinguished the factual situation involved in that case from a suit seeking redress for the misappropriation of corporate assets. *Id.* at 834. The essence of the pilots' claim is that the UGLP parties are misappropriating corporate assets by diverting profits to companies controlled by the UGLP parties.