**Donald BRENNAN, Martin Connaughton, Tad Derf, Howard Dobbins, Duane Evavold, Thomas Ojard, and John Soderquist, Plaintiffs,**

v.

**Jack L. CHESTNUT; Chestnut and Brooks, P.A.; Anthony F. Rico; Edward J. Senff, George Luckenbill; Richard E. Olsen; Andrew J. Sciullo; Jan Ziegler, Robert W. O'Brien, William T. Rogers; Seaway Services Corporation; General Business Services, Inc.; Central Dispatch, Inc.; and, Upper Great Lakes Pilots, Inc., Defendants.**

Civ. No. 4–91–288.

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 4, 1991.

Gaylord W. Swelbar, Robin C. Merritt, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, Minn., for plaintiffs.

Phillip Cole, Paul C. Peterson, Linda G. Axelrod, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, Minn., for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiffs' motion to transfer venue and defendants' motion to dismiss. Based on the file, record and proceedings herein, and for the reasons stated below, defendants' motion to dismiss is granted and plaintiffs' motion to transfer venue is denied.

## BACKGROUND

Defendant Upper Great Lakes Pilots, Inc. ("UGLP") is a Minnesota corporation

with its principal place of business in Duluth, Minnesota. UGLP is a government financed monopoly and it was established pursuant to the Great Lakes Pilotage Act of 1960. 46 U.S.C. § 9301 et seq. ("Pilotage Act"). The Pilotage Act requires vessels operating on certain waterways on Lake Superior, Lake Huron, Lake Michigan, the St. Mary's River, the Sault Ste. Marie Locks and approaches into these locks to hire a UGLP pilot. These waterways collectively are known as the Great Lakes District Three ("District Three").

The United States Department of Transportation ("DoT") regulates the UGLP and is responsible for setting pilot rates.[1] DoT determines those rates by analyzing projected amounts of traffic and the anticipated pilotage expenses incurred to serve the traffic. The UGLP provides DoT with the financial and accounting information DoT uses to make those determinations.

The other defendants named in this case are companies and individuals who do business with or are intricately tied in with UGLP. Defendant Seaway Services Corporation is a Minnesota Corporation that was created to lease equipment to UGLP. Defendant Central Dispatch, Inc., an Illinois Corporation, dispatches and assigns pilots to vessels for UGLP. Central Dispatch is a wholly-owned subsidiary of Seaway Services Corporation. Defendant General Business Services, Inc., a Minnesota corporation, provides clerical and accounting services to UGLP, Seaway Services Corporation and Central Dispatch, Inc. Defendants Anthony Rico, Edward Senff, George Luckenbill, Richard Olsen and Andrew Sciullo comprise the board of directors and officers of UGLP. Defendants Jack Chestnut, Jan Ziegler, Anthony Rico, Andrew Sciullo, Robert O'Brien and William Rogers comprise the board of directors and officers of Seaway Services Corporations. Defendants Chestnut and Brooks, P.A. provide legal services for UGLP.

Plaintiffs are pilots who presently perform or in the past have performed pilotage services on behalf of UGLP. Some of these pilots also are minority shareholders of UGLP. All the plaintiffs claim a loss of compensation resulting from defendants' fraudulent schemes. Some of the plaintiffs also allege a loss of their pilot jobs as a result of defendants' fraudulent activities. In particular, plaintiffs allege that UGLP acted with the other defendants named in this suit to fraudulently increase the expenses that UGLP must report on the financial and accounting information it submits to DoT, in an attempt to force the government to increase UGLP's rates. Plaintiffs allege that through common control of the boards of directors and ownership of the UGLP, defendants have entered into contracts and declined to discontinue contractual arrangements between UGLP and the other defendants that are unreasonable, unnecessary and that charge excessive fraudulent fees to UGLP. In so doing, plaintiffs allege that defendants are fraudulently siphoning off UGLP's profits, some of which would be distributed to plaintiffs if available.

Plaintiffs also allege that defendants have maintained their fraudulent scheme through threats, coercion and extortion occurring over a number of years. Plaintiffs allege that the threats included threats of physical violence as well as threats against the plaintiffs' professional and economic interests. Plaintiffs further allege that the threats, coercion and extortion were directed and intended to force plaintiffs to refrain from objecting to the defendants' scheme, seeking assistance from the government, or questioning the financial information provided to plaintiffs as shareholders and employees of UGLP.

Plaintiffs' complaint consists of two counts. The first count asserts claims against defendants for various violations of § 1962(a), (b), (c) and (d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68.[2] Plain-

---

**1.** DoT has delegated the responsibility for the Great Lakes Pilotage Program to the United States Coast Guard. 49 C.F.R. 1.46. For the purposes of this order, however, the court finds that reference to the Department of Transportation only is appropriate.

**2.** Section 1962(a) prohibits a person who has received "income derived ... from a pattern of

tiffs rely upon mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, extortion, 18 U.S.C. § 1951, and violations of state law that amount to coercion as the predicate acts of racketeering that bring defendants' activities within the proscription of RICO. *See* 18 U.S.C. § 1961(1). As such, plaintiffs ask for treble damages and reasonable attorney's fees. 18 U.S.C. § 1964(c). Count II of the complaint asserts a claim against defendants for common law fraud.

Plaintiffs filed the complaint in the Minnesota District Court, Sixth Judicial District, located in Duluth, Minnesota. Defendants petitioned for removal, pursuant to 28 U.S.C. § 1441, on the basis of federal question jurisdiction. Defendants directed their Petition For Removal "to the Judges of the United States District Court for the District of Minnesota, Fifth Division". Defendants' Notice of Filing of Petition and Bond for Removal also designated that defendants "filed their Petition and Bond for Removal ... in the office of the Clerk of the United States District Court for the District of Minnesota Fifth Division". Defendants' Bond on Removal, which designated that the action commenced in the Minnesota District Court, Sixth Judicial District, County of St. Louis, also was petitioned for removal to the Fifth Division. Plaintiffs allege that these filings dictate that this action properly should be tried in the Fifth Division of the United States District Court for the District of Minnesota, and not in the Fourth Division, located in Minneapolis, Minnesota, to which the case is currently assigned.

racketeering activity" to "use or invest" such income in an "enterprise" that is engaged in or "affects interstate or foreign commerce." 18 U.S.C. § 1962(a). Section 1962(b) makes it unlawful to "acquire or maintain" an "interest in or control of" an "enterprise which is engaged in" or affects "interstate or foreign commerce." 18 U.S.C. § 1962(b). Section 1962(c) prohibits a person "employed by or associated with" an "enterprise engaged in" or which affects "interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). Section 1962(d) prohibits a conspiracy to violate § 1962(a), (b) or (c). 18 U.S.C. § 1962(d).

Consequently, plaintiffs move the court to transfer venue of this case to the Fifth Judicial Division of the United States District Court for the District of Minnesota. Defendants oppose that motion and move to dismiss the case pursuant to Rules 9(b), 12(b)(1), 12(b)(6) and 56 of the Federal Rules of Civil Procedure.[3]

## DISCUSSION

### Standard of Review

On a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff and the complainant's allegations must be accepted as true. In addition, the court must resolve any ambiguities concerning the sufficiency of the claims in favor of the plaintiff. *Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972) (per curiam). The court must give the plaintiffs "the benefit of every reasonable inference" drawn from the "well-pleaded" facts and allegations in the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 1465 n. 6, 10 L.Ed.2d 678 (1963). Plaintiffs need not necessarily plead a particular fact if that fact may be reasonably inferred from facts properly alleged. *See id.; see also Wheeldin v. Wheeler*, 373 U.S. 647, 648, 83 S.Ct. 1441, 1443, 10 L.Ed.2d 605 (1963) (inferring fact from allegations of complaint). Thus, courts favorably construe a complaint for the benefit of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

3. Both plaintiffs and defendants have filed affidavits with the court. To the extent that the court relies on those additional findings in making its determination, defendants' motion will be treated as motions for summary judgment. *See* Fed.R.Civ.P. 12(b)(6) & 56. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ So construed, the "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). However, despite the deference the court gives to plaintiffs' allegations, it is not proper for the court to assume that plaintiffs "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged." *Associated General Contractors v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

*Motion to Dismiss*

■ Defendants contend that plaintiffs' complaint must be dismissed because (1) plaintiffs' complaint fails to plead fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure; (2) plaintiffs lack standing to bring this action; (3) plaintiffs' claims are preempted by federal labor laws; and (4) plaintiffs have not adequately pled a RICO claim. The court finds that the disposition of this motion requires it to address only defendants' third argument that the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 et seq., preempts plaintiffs' RICO claims. The court finds that preemption is proper. Accordingly, the court need not discuss defendants' other arguments for dismissal or plaintiffs' motion to transfer venue.

A. *Preemption by the National Labor Relations Act*

Defendants argue that the NLRA preempts plaintiffs' RICO claims because the complaint amounts to nothing more than an allegation of a labor dispute regarding management of a corporation. Defendants argue that the proper characterization of plaintiffs' claims as labor issues would dictate that the National Labor Relations Board ("NLRB") retain exclusive jurisdiction over the claims presently before the court. The court finds this argument persuasive.

Congress created the NLRB to settle labor disputes and its jurisdiction over such matters is almost totally exclusive. The Supreme Court stated that the NLRA "preempts state and federal court jurisdiction to remedy conduct that is arguably protected or prohibited by the [National Labor Relations] Act." *Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Employees v. Lockridge*, 403 U.S. 274, 276, 91 S.Ct. 1909, 1913, 29 L.Ed.2d 473 (1971) (explaining the labor law preemption doctrine established in *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Originally, the NLRB had exclusive jurisdiction to adjudicate allegations of unfair labor practices. *Amalgamated Util. Workers v. Consolidated Edison Co.*, 309 U.S. 261, 264, 60 S.Ct. 561, 563, 84 L.Ed. 738 (1940); *Butchers' Union, Local No. 498 v. SDC Inv., Inc.*, 631 F.Supp. 1001, 1006–07 (E.D.Cal.1986). Now, however, although the NLRB generally has jurisdiction over labor disputes, preemption does not apply if the court can reasonably infer that Congress did not intend the NLRB to have exclusive jurisdiction over a particular labor matter.[4] *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 911, 17 L.Ed.2d 842 (1967). Therefore, the court must determine whether the RICO claims presented here are exempt from the NLRA's preemption power. *See e.g., MHC v. International Union, United Mine Workers of Am.*, 685 F.Supp. 1370, 1375–77 (E.D.Ky.1988); *Brown v. Keystone Consol. Indus., Inc.*, 680 F.Supp. 1212, 1224–26 (N.D.Ill.1988); *Butchers' Union*, 631 F.Supp. at 1009–11.

In order to maintain a RICO claim, plaintiffs must sufficiently allege the requisite "pattern of racketeering activity." RICO lists acts, known as predicate acts, that the definition of racketeering activity encompasses. *See* 18 U.S.C. § 1961(1). Plaintiffs allege that defendants committed mail fraud in violation of 18 U.S.C. § 1341, wire

---

**4.** Congress itself has passed some exceptions to the NLRB's exclusive jurisdiction. *See Vaca,* 386 U.S. at 179, 87 S.Ct. at 911; *Butchers' Union,* 631 F.Supp. at 1006–07.

fraud in violation of 18 U.S.C. § 1343, and extortion in violation of 18 U.S.C. § 1951.[5] Plaintiffs further allege that these violations constitute predicate acts under 18 U.S.C. § 1961(1)(B), are sufficient to demonstrate liability for racketeering activity under RICO, and support RICO claims independent of any labor claims.

Plaintiffs are correct that mail fraud, wire fraud, and extortion are predicate acts under RICO. But in the labor context, assuming that these predicate acts have occurred as alleged, whether a federal court may exercise jurisdiction over the plaintiffs' claims requires additional analysis. Mail fraud, wire fraud, and extortion are merely conduits through which fraud is committed. The court additionally must determine whether the violation of law underlying the fraud is one upon which the court may exercise jurisdiction.

### a. Mail and Wire Fraud

The mail and wire fraud statutes prohibit the use of the mail or wires to commit a fraud. However, the statutes do not define fraud, leaving that task to other statutes. *Butchers' Union*, 631 F.Supp. at 1011.

> "Congress enacted § 1341 forbidding and making criminal any use of the mails 'for the purpose of executing [a] scheme' to defraud or to obtain money by false representations—leaving generally the matter of what conduct may constitute such a scheme for determination under other laws."

*Id., citing Parr v. United States*, 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960), *quoting* 18 U.S.C. § 1341. Congress modeled the wire fraud provision, § 1343, after the mail fraud provision and the wire fraud provision has received the same interpretation. *Id., citing United States v. Louderman*, 576 F.2d 1383, 1387 and n. 3 (9th Cir.1978), *cert. denied*, 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978), *citing United States v. Donahue*, 539 F.2d 1131, 1135 (8th Cir.1976). Therefore, use of the mail or wires is an offense only when used as a means to perpetrate a fraud. To determine whether a fraud has been committed, courts must look to other law.

Here, plaintiffs claim that defendants' mail and wire fraud do not involve labor law and imply that the very act of mail or wire fraud is sufficient to sustain an independent RICO claim or that some other law is at the base of the fraud. Plaintiffs' complaint and memorandum in support of their complaint are not clear on this point. If plaintiffs base their RICO claims on the latter theory, plaintiffs failed to cite any other law that could be the basis of their fraud claims. The court finds that this vagueness in the plaintiffs' allegations does not affect the outcome of this case.

Regardless of the theory that plaintiffs' use, the court disagrees with plaintiffs' argument and finds that the underlying wire and mail fraud alleged is predicated upon a violation of labor law. The underlying conduct that forms the core of plaintiffs' complaint is that defendants' have fraudulently deprived them of certain employment benefits. The court finds that it would need to examine the relevant agreements governing pilot compensation, work assignment, layoffs and discharges. Consequently, such an examination would involve issues of labor law and the court finds that these issues fall within the province of the NLRB.

 The only violation of federal labor law that is exempt from NLRA preemption

---

5. In paragraph 37 of their complaint, plaintiffs also allege that defendants' "pattern of racketeering has included acts which are chargeable under state law and punishable by imprisonment for more than one year and which involve acts or threats of extortion (coercion)." Plaintiffs make this coercion claim in order to establish another predicate act upon which a RICO claim may be brought. *See* 18 U.S.C. § 1961(1)(A). Plaintiffs, however, failed to specify the state law that defendants' may have violated. Further, the court finds that even if the plaintiffs had alleged a valid predicate act based on a violation of state law, the court would not have jurisdiction over such a claim. Analysis of any coercion claim based on the facts of this case would involve an analysis of labor issues. Based on the analysis in this order, such a matter would be within the province of the NLRB. Accordingly, the court will limit its analysis of the alleged predicate acts to mail fraud, wire fraud, and extortion.

and for which a plaintiff may bring a RICO claim is listed as a separate predicate act under the RICO statute. *See Butchers' Union*, at 1007. In *Butchers' Union*, the court found that a violation of 29 U.S.C. § 186,[6] a provision of the Labor Management Relations Act, may be used to support a RICO cause of action because § 186 is listed among the acts that constitute "racketeering activity" under § 1961(1) of RICO. *Id.* at 1007–08. The court finds that the plaintiffs' claims do not implicate § 186.

### b. Extortion

 The analysis of plaintiffs' extortion claim is substantially similar to the court's analysis of the mail and wire fraud claim. Assuming that plaintiffs could show that defendants committed extortion under 18 U.S.C. § 1951, the court finds that defendants' underlying conduct is extortionate only by virtue of the labor laws. Plaintiffs' complaint asserts that defendants' extortion forced plaintiffs to refrain from objecting to defendants' activities and to accept unfair working rules and wage agreements, all of which eventually lead to the lay off and subsequent discharge of some of the plaintiffs. The court finds that as with the predicate acts of mail fraud and wire fraud, the court would also be forced to examine the various employment agreements between plaintiffs and defendants in order to resolve plaintiffs' extortion claims. Thus, plaintiffs' claims are within the NLRB's jurisdiction and not the court's jurisdiction.[7] Accordingly, the plaintiffs' RICO claims are dismissed without prejudice.

*Common Law Fraud*

 The court has discretion to hear plaintiffs' common law fraud claim under the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). However, the *Gibbs* Court stated that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.... [I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139; *see also* 28 U.S.C. § 1367(c)(3). Here, the court will exercise its discretion under the pendent jurisdiction doctrine and decline to hear the common law fraud claim. The parties will not be prejudiced by having these claims adjudicated in one proceeding before the NLRB.

Accordingly, IT IS HEREBY ORDERED that:

1. The defendants' motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure is granted; and

2. The plaintiffs' motion to transfer venue is denied.

---

6. 29 U.S.C. § 186 covers restrictions on payments and loans to employee representatives, labor organizations, officers and employees of labor organization, and to employees of groups or committees of employees.

7. The court also takes notice that similar grievances involving at least some of these plaintiffs are currently pending in a NLRB proceeding.